1
2
3
4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    GOPRO, INC.,                              Case No. 16-cv-03590-JST

8              Plaintiff,

9         v.                                   **ORDER DENYING MOTION TO STAY**

10   C&A MARKETING, INC., et al.,              Re: ECF No. 40

11             Defendants.

12        Before the Court is Defendants C&A Marketing, Inc., C&A Licensing, LLC, and PLR IP

13   Holding, LLC's (collectively, "C&A") Motion to Stay Litigation Pending Inter Partes Review.

14   ECF No. 40. The Court will deny the motion without prejudice.

15   **I.    BACKGROUND**

16        GoPro filed its complaint in this action on June 27, 2016, alleging infringement of U.S.

17   Patent Nos. 9,025,896 (the "'896 patent") and 9,282,226 (the "'226 patent"). ECF No. 1. GoPro

18   is a consumer electronics company known for its "versatile cameras and accessories as well as its

19   proprietary technology for capturing images, transmitting, editing, and viewing those images." Id.

20   ¶ 10. GoPro's primary product line is its HERO series of cameras, including the "square-front"

21   HERO4 Session. Id. ¶¶ 12, 21. GoPro accuses C&A of infringing through its manufacture and

22   sale of Polaroid brand photography equipment, including specifically the Polaroid Cube and

23   Polaroid Cube + products, in conjunction with related software applications.[1] Id. at 5-9. C&A

24   filed its answer to GoPro's complaint on August 2, 2016, asserting counterclaims for declaratory

25

26   [1] On April 14, 2017, GoPro filed a motion for leave to amend its complaint to assert claims for
     infringement of two design patents by C&A's Polaroid XS80, XS100, and XS100i cameras and
27   Polaroid XS80 and XS100 Lens Replacement Kits. ECF No. 39. In reliance on representations by
     C&A that it would not make, use, offer to sell, or sell within or import into the United States any
28   of these products after May 15, 2017 and would destroy any existing supply of these products,
     GoPro agreed to withdraw its motion. ECF No. 51.

1  judgment of non-infringement and invalidity.  ECF No. 12 at 12-13.

2  On November 18, 2016, the Court entered a case schedule setting the close of fact

3  discovery on August 14, 2017.  ECF No. 33 at 2.  GoPro served its infringement contentions on

4  C&A on December 2, 2016, and C&A served its invalidity contentions on January 16, 2017.  ECF

5  No. 40 at 6.  The parties began making their claim construction disclosures in February 2017.  See

6  ECF No. 33 at 1.  On March 17, 2017, the parties filed their Joint Claim Construction and

7  Prehearing Statement pursuant to Patent Local Rule 4-3, indicating that they disputed the

8  constructions of four claim terms of the '896 patent.  ECF No. 38.

9  On April 21, 2017, C&A filed a petition for inter partes review ("IPR petition") with the

10  Patent Trial and Appeal Board ("PTAB") challenging the validity of each asserted claim of the

11  '896 patent pursuant to 35 U.S.C. § 311.  ECF No. 40-2.  GoPro's patent owner response is due no

12  later than three months after the filing date accorded the petition, or July 21, 2017.  37 C.F.R. §

13  42.107(b); C&A Marketing, Inc. v. GoPro, Inc., Case No. IPR2017-01300, Paper 5 (P.T.A.B. May

14  16, 2017) (according filing date for the petition of April 21, 2017).  The PTAB is statutorily

15  required to issue an institution order (1) within three months after receiving a preliminary response

16  to the petition under Section 313; or (2) if no such preliminary response is filed, the last date on

17  which such response may be filed.  35 U.S.C. § 312(b).  The PTAB must issue its final written

18  decision on the petition by no later than one year following the institution decision.  35 U.S.C. §

19  316(a)(11).  On April 24, 2017, C&A filed the instant motion to stay pending resolution of its IPR

20  petition.  ECF No. 40.

21  GoPro filed its opening claim construction brief on April 28, 2017, ECF No. 42, C&A filed

22  its responsive claim construction brief on May 12, 2017, ECF No. 48, and GoPro filed its reply on

23  May 19, 2017, ECF No. 53.[2]  The Court held a technology tutorial on May 30, 2017.  ECF No. 61.

24  A Markman hearing is scheduled for June 15, 2017.

25  **II.    LEGAL STANDARD**

26  "Courts have inherent power to manage their dockets and stay proceedings, including the

27

28  [2] By Order dated May 31, 2017, the Court granted GoPro's motion to strike the declaration of
Alan C. Bovik in support of C&A's responsive claim construction brief.  ECF No. 62.

1  authority to order a stay pending conclusion of a PTO [Patent and Trademark Office]

2  reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (internal citations

3  omitted).  In determining whether to stay a case pending review by the PTO, courts consider the

4  following factors:  (1) whether discovery in the case is complete and whether a trial date has been

5  set; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a

6  stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.

7  Cygnus Telecomms. Tech., LLC, Patent Litig., 285 F.Supp.2d 1022, 1023 (N.D.Cal.2005); see

8  also SAGE Electrochromics, Inc. v. View, Inc., No. 12-cv-06441-JST, 2015 WL 66415, at *1

9  (N.D. Cal. Jan. 5, 2015) (applying the framework applicable to motions to stay pending

10  reexamination by the PTO to motions to stay pending the newer inter partes review process).

11  While case law supplies these general considerations, the Court ultimately must decide whether to

12  issue a stay on a case-by-case basis.  Asetek Holdings, Inc. v. Cooler Master Co., Ltd., No. 13-cv-

13  00457-JST, 2014 WL 1350813, at * 1 (N.D. Cal. Apr. 3, 2014).

14  **III.  DISCUSSION**

15      **A.  Stage of the Proceedings**

16      C&A argues that this case is in its early stages.  According to C&A, discovery "is in its

17  infancy," as "[n]o depositions have been taken; no expert testimony has been conducted; no

18  dispositive motions have been scheduled or heard, and the Court has not yet held a claim

19  construction hearing."  ECF No. 40 at 8-9.  C&A argues that document production as of the date

20  of its motion was limited, with GoPro having only made a small production of technical

21  documents pursuant to Patent Local Rule 3-2.  Id. at 9.  GoPro counters that "the parties are far

22  along in this litigation," and "[f]act discovery is well under way and closes August 14, 2017."

23  ECF No. 50 at 2.  It notes that "[t]he parties have exchanged written discovery and . . . have

24  produced a number of documents."  Id. at 2.  GoPro disputes C&A's characterization of the state

25  of discovery, as the parties stipulated to the use of over 17,000 documents produced in a separate

26  matter in the District of New Jersey involving the same parties and accused products.  Id. at 3.

27  GoPro notes that C&A has produced a significant number of source code files relevant to the '896

28  patent and that GoPro has already scheduled seven depositions in mid-June.  Id.  GoPro also notes

3

United States District Court
Northern District of California

1    that it has "engaged in substantial third-party discovery," negotiating with relevant third parties to

2    secure documents and schedule depositions. Id. at 3. Finally, GoPro points out that claim

3    construction briefing is now complete, with a Markman hearing scheduled for June 15, 2017. See

4    id. at 4.

5         The Court first considers the relevant time period to evaluate the stage of proceedings.

6    Citing the Federal Circuit's opinion in VirtualAgility, C&A argues that "[t]he stage of the

7    litigation generally is measured as of the time that the motion to stay was filed." ECF No. 40 at 8

8    (citing VirtualAgility Inc. v. Salesforce.com, Inc., 759 F.3d 1307, 1315 (Fed. Cir. 2014)). In its

9    reply brief, C&A criticizes GoPro for citing events subsequent to the filing of the motion to stay in

10   its arguments that discovery is far along. ECF No. 56 at 3. While C&A is correct that the Court

11   should consider the state of the litigation as of the date of the filing of the motion to stay, the

12   Federal Circuit has also made clear that "courts are not obligated to ignore advances in the

13   litigation" at the time it considers the motion.[3] Versata Software, Inc. v. Callidus Software, Inc.,

14   771 F.3d 1368, 1373 (Fed. Cir. 2014) (holding that a district court may properly wait for an

15   institution decision before resolving a motion to stay pending IPR, and that the court can consider

16   subsequent developments in the litigation from the filing date of the motion until the date of the

17   institution order) (vacated on other grounds, 780 F.3d 1134 (Fed. Cir. 2015)).

18        Here, "[d]iscovery has not significantly advanced and a trial date has not yet been set,"

19   "[n]o dispositive motions have been scheduled or heard, and only written discovery has taken

20   place." SAGE Electrochromics, Inc., 2015 WL 66415 at *2; see also Cypress Semiconductor

21   Corp. v. GSI Tech., Inc., No. 13-cv-02013-JST, 2014 WL 5021100, *2 (N.D. Cal. Oct. 7, 2014)

22   (finding stay appropriate where "parties have engaged in some discovery [but] . . . no depositions

23   have been taken or scheduled, little expert discovery has been conducted, claim construction has

24   only occurred with respect to the patents that are not the subject of this motion, and no dispositive

25   motions have been scheduled or heard."). On the other hand, when the motion to stay was filed,

26

27   _____

     [3] The relevant date to consider with respect to this factor is more important where courts do not
     issue orders until several months after the filing of the motion. See, e.g., VirtualAgility, 759 F.3d

28   at 1317 (motion to stay filed in May 2013, institution decision issued on March 2014, district court
     order issued on January 9, 2014).

4

United States District Court
Northern District of California

1   the parties had already exchanged infringement and invalidity contentions and made their

2   corresponding document productions under Patent Local Rules 3-2 and 3-4, exchanged written

3   discovery, and made their initial claim construction disclosures. See ECF No. 40 at 8. The parties

4   were ready to begin claim construction briefing with the technology tutorial and Markman hearing

5   just weeks away. Moreover, after the filing of the motion to stay, the parties provided their

6   respective technology tutorials and the Court expended resources in reviewing the parties' claim

7   construction disclosures and preparing for the tutorial and Markman hearing.

8          The Court finds that this case is in its early stages, particularly when considered as of the

9   date of C&A's motion, and this factor thus weighs slightly in favor of a stay.

10         **B.      Simplification of the Issues and Trial of the Case**

11         C&A argues that "[s]taying this litigation will simplify the issues and promote judicial

12   economy" because: (1) "[e]ach and every asserted claim of the '896 patent has been challenged in

13   the IPR petition" and "[a]ny claims that are canceled will not need to be litigated in this case"; (2)

14   "Defendants will be estopped from re-litigating invalidity issues addressed in the IPR as to any

15   claims that survived"; and (3) no matter the outcome of the IPR the Court will benefit from the

16   PTAB's "expert opinion" on invalidity issues. ECF No. 40 at 9.

17         GoPro responds that the filing of an IPR alone does nothing to simplify issues in the case

18   unless it is ultimately instituted and successful, and the PTAB will not issue its institution order

19   until October 21, 2017. ECF No. 50 at 5. It also argues that C&A does not challenge any claims

20   of the asserted '226 patent, which GoPro says is "entirely unrelated and directed to [a] different

21   technology area[]" than the challenged '896 patent, meaning that the IPR would have not simplify

22   that part of the case at all. Id. at 6. GoPro also notes that the different standards applied by the

23   PTAB and this Court with respect to claim construction means that GoPro's statements in the

24   preliminary response to the petition will not bear on the claim construction issues in this litigation.

25   Id. at 7.

26         With respect to this factor, the Court finds most relevant the fact that C&A's petition was

27   filed shortly before its motion, review has not yet been instituted, and the institution decision will

28   not come for several months. Previously, this Court has held that "the filing of an IPR request by

5

1    itself does not simplify the issues in question and trial of the case.  Ultimately, the PTO may not

2    institute IPR proceedings." TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corporation, No.

3    13-cv-02218–JST, 2013 WL 6021324, at *4 (N.D.Cal. Nov. 13, 2013).  C&A is correct that the

4    IPR, if instituted, would increase the likelihood of simplification, but this argument is largely

5    undercut by the reality that IPR has not yet been instituted. See id. at n. 1 ("This Court believes

6    the balance does not shift in [favor of stay] [ ] until the PTO has granted the [IPR] application.").

7    C&A cites this Court's order in Grobler v. Apple Inc., No. 12-cv-01534-JST, ECF No. 67 (N.D.

8    Cal. June 6, 2013) for the proposition that it would be appropriate to issue "a temporary stay

9    pending the USPTO's decision as to whether to grant or deny the IPR petition" so that the Court

10   could consider the institution decision as part of the intrinsic record of the patent.  ECF No. 56 at

11   5.

12        The Court finds Grobler to be distinguishable.  There, the Markman hearing and tutorial

13   were scheduled to take place on July 23, 2013. Grobler, ECF No. 52.  The institution decision was

14   set to issue the day before that hearing, on July 22, 2013.  ECF No. 67.  Thus, the Court found it

15   prudent in that case to wait for the institution decision rather than holding a Markman hearing a

16   day after the institution decision when neither the parties nor the Court would be prepared to

17   consider the import of the decision on the claim construction issues in dispute.  Here, in contrast,

18   the Markman hearing is scheduled for June 15, 2017, and the institution decision is not expected

19   until four months hence.  A temporary stay here would not be appropriate.

20        The Court also finds persuasive GoPro's argument that the IPR, even if successful, would

21   not result in any simplification of the claims related to the '226 patent.  Indeed, C&A does not

22   dispute GoPro's contention that the '226 and '896 patents cover different technology and are

23   completely unrelated, and that, even if all challenged claims of the '896 patent are found

24   unpatentable, the claims relating to the '226 patent would still survive and go forward.  The Court

25   acknowledges that "there can still be simplification of the issues when only some, but not all, of

26   the claims asserted in litigation are challenged in [IPR]." Versata Software, Inc., 2014 WL

27   6480522, at *3.  For this reason, "[a] proper simplification analysis would look to what would be

28   resolved by [IPR] review versus what would remain." Id.  Here, half of the case would remain,

6

1    and would be substantially unaffected by the IPR proceedings.  This, combined with the

2    uncertainty surrounding whether the PTO will elect to institute IPR proceedings, weighs

3    significantly against a finding of likelihood of simplification of the issues, and thus weighs against

4    a stay at this time.  The Court recognizes, however, that if IPR proceedings are instituted the

5    potential for simplification of the issues would increase.

6    ### C.    Prejudice and Disadvantage

7         The last factor is "whether a stay would unduly prejudice or present a clear tactical

8    disadvantage to the non-moving party." Cygnus Telecomms. Tech., LLC, 285 F.Supp.2d at 1023.

9    Delay alone does not usually constitute undue prejudice, because "parties having protection under

10   the patent statutory framework may not 'complain of the rights afforded to others by that same

11   statutory framework.'" KLA-Tencor Corp. v. Nanometrics, Inc., No. 05-cv-03116-JSW, 2006

12   WL 708661, at *3 (N.D. Cal. Mar. 16, 2006) (quoting Pegasus Dev. Corp. v. DirecTV, Inc., 2003

13   WL 21105073, at *2 (D. Del. May 14, 2003)).  Nevertheless, in evaluating prejudice, "courts also

14   consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking

15   reexamination of a patent." Id.  Such tactics include seeking reexamination on the "eve of trial or

16   after protracted discovery." Id.  In evaluating prejudice, this Court considers:  "(1) the timing of

17   the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination

18   proceedings; and (4) the relationship of the parties." SAGE Electrochromatics, 2015 WL 66415 at

19   *3 (quoting Ever Win Int'l Corp. v. Radioshack Corp., 902 F.Supp.2d 503, 508 (D.Del.2012)).

20   ### 1.    Timing of Reexamination Request

21        GoPro argues that C&A unreasonably delayed in waiting ten months after the filing of the

22   complaint – two months before the statutory bar – and four months after the service of

23   infringement contentions to file its IPR petition, and therefore this factor does not "weigh heavily

24   in favor of granting a stay." ECF No. 50 at 7-8.  C&A counters that this factor weighs against a

25   finding of prejudice, as it "was diligent in preparing and filing the IPR petition challenging the

26   '896 patent, and filed its petition well in advance of this statutory deadline." ECF No. 40 at 11.

27   C&A contends it was justified in waiting until after receiving GoPro's infringement contentions to

28   file its IPR petition so that it could determine the claims at issue and, thus, the claims to challenge,

7

1    and that waiting four months after service of infringement contentions to file the petition is

2    reasonable given the difficulty of preparing an IPR petition.  Id.

3          The Court finds that this sub-factor weighs against a finding of prejudice.  "This Court

4    expects accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as

5    possible after learning that a patent may be asserted against them.  Provided an accused infringer

6    is diligent, delay due to preparing an IPR petition, ascertaining the plaintiff's theories of

7    infringement, or otherwise researching the patents that have been asserted in an action does not

8    unduly prejudice the patent owner."  Asetek, 2014 WL 1350813, at *5.  "[W]aiting until after

9    receiving infringement contentions to analyze the claims alleged and then filing petitions for

10   review does not cause undue prejudice."  Cypress Semiconductor Corp., 2014 WL 5021100, at *4;

11   see also Evolutionary Intelligence LLC v. Yelp Inc., No. C-13-03587 DMR, 2013 WL 6672451, at

12   *9 (N.D. Cal. Dec. 18, 2013) (finding that petitioning for IPR five months after being served

13   preliminary infringement contentions was reasonable timing).

14         GoPro does not dispute that C&A filed its petition well before the statutory deadline and

15   within a few months of receiving GoPro's infringement contentions. See Asetek, 2014 WL

16   1350813, at *4 ("Delay alone [within the statutory deadline] does not usually constitute undue

17   prejudice because parties having protection under the patent statutory framework may not

18   complain of the rights afforded to others by that same statutory framework.") (citations and

19   internal quotations omitted).  The Court has previously found that a defendant who waited six

20   months after being served with infringement contentions to file its IPR petition did not delay so as

21   to prejudice the patentee.  SAGE Electrochromics, Inc., 2015 WL 66415 at *4.  The Court

22   therefore finds that C&A acted with reasonable diligence in filing its petition four months after

23   receiving GoPro's infringement contentions.  This factor does not support a finding of prejudice to

24   GoPro.

25                    **2.      Timing of Request for a Stay**

26         C&A filed its motion for stay just days after it filed its IPR petition.  GoPro concedes that

27   C&A "promptly requested a stay after finally filing the IPR."  ECF No. 50 at 8.  This factor,

28   therefore, does not support a finding of prejudice.

8

### 3. Status of Reexamination Proceedings

GoPro argues that because "the Patent Office has not instituted the IPR and will not make its decision until October of this year, . . . this sub-factor weighs strongly against a stay." ECF No. 50 at 8. C&A does not specifically address this factor in its papers, but notes that the "requested stay is of a limited duration," as if the PTAB does not institute review by October the parties could request that the stay be lifted resulting in little prejudice to GoPro. See ECF No. 40 at 11-12.

This Court has previously concluded that this sub-factor weighs against issuing a stay when the PTO has not yet decided whether to grant IPR. See SAGE Electrochromics, Inc., 2015 WL 66415 at *4; TPK Touch Solutions, Inc., 2013 WL 6021324 at *5. Because the PTAB may not act on the petition until October 2017, the status of the IPR proceedings supports a finding of prejudice.

### 4. Relationship of the Parties

GoPro argues that the relationship between the parties supports a finding of prejudice, as GoPro and C&A are each involved "in the business of marketing and selling cameras and accessories relating to their cameras." ECF No. 50 at 8. GoPro notes that both its HERO Session and HERO5 Session cameras and the accused Polaroid Cube and Cube+ cameras are square-faced cameras with remote image and video preview functionality. Id. at 9. C&A responds that GoPro the parties' relationship does not support a finding of prejudice because there is no evidence that GoPro would suffer competitive harm as a result of a stay. ECF No. 56 at 8. C&A further contends that the competitive injury, if any, from a stay would be minimal because they are not the only competitors in the marketplace. Id.

"[C]ompetition between parties can weigh in favor of finding undue prejudice." VirtualAgility, 759 F.3d 1307, 1318 (Fed.Cir.2014); see also TPK Touch Solutions, Inc., 2013 WL 6021324 at *5 ("Because [the parties] are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise"). The evidence submitted by GoPro regarding how the parties viewed each other and their competitive strategy efforts do generally support the notion that the parties are, at least in a broad sense, competitors. However, "[t]here is no evidence . . . that customers have in fact purchased allegedly infringing [C&A/Polaroid products] when they

9

1    would otherwise have purchased [GoPro products], or that [GoPro] has lost any market share to

2    [C&A]. In other words, there is no competitive injury." Cypress Semiconductor Corp., 2014 WL

3    5021100 at *4. Moreover, though not dispositive, GoPro's failure to seek a preliminary injunction

4    cuts against its claim of prejudice from delay. See VirtualAgility, 759 F.3d at 1319

5    (acknowledging that "there could be a variety of reasons that a patentee does not move for a

6    preliminary injunction," but noting that a party's failure to seek a preliminary injunction

7    "contradict[ed] [that party's] assertion that it needs injunctive relief as soon as possible."). The

8    Court finds this sub-factor to be neutral. The Court finds that the parties are competitors (albeit

9    not the only competitors in the market). But the Court does not have enough information to

10   conclude that a stay would cause GoPro competitive harm.

### 5.      Conclusion as to Prejudice

12   Having considered these factors, the Court finds that GoPro would face prejudice from a

13   stay. A stay would not only prevent GoPro from pursuing its claims as to the '896 patent, but also

14   would prevent it from pursuing its claims and taking discovery related to the '226 patent. And in

15   that time, C&A may continue to gain a foothold in the digital camera market in which both parties

16   compete. Moreover, the Court finds the nascent stage of the IPR proceedings, and the fact that

17   GoPro's case in this Court would be delayed by four months while the PTAB decides whether to

18   even institute review, weighs strongly in favor of a finding of undue prejudice and against a stay.

### CONCLUSION

20   The Court concludes that a stay is not merited at this time. While the litigation has not

21   advanced to the point where a stay would be untenable, the Court gives significant weight to the

22   fact that the PTAB has not yet decided to institute review, and will not issue its institution decision

23   for several months. The parties and the Court have already expended resources in preparing for

24   the upcoming Markman hearing. Moreover, given the chance that the PTAB will decline to

25   institute review, the Court declines to enter a stay that would prevent GoPro from pursuing its

26   claims and taking discovery related to the '226 patent, which is not at issue in the IPR petition.

27   Thus, the Court will deny C&A's motion to stay at this time.

28   However, the Court acknowledges that the calculus may be different if and when the

1  PTAB decides to institute review of the '896 patent.  Thus, the Court denies the motion to stay

2  without prejudice should C&A elect to renew its motion after the PTAB has acted on the IPR

3  petition.

4        IT IS SO ORDERED.

5  Dated:  June 15, 2017

6

7  _____
                        JON S. TIGAR
8                   United States District Judge